UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

JOHN AGUILA, and individual,

    Plaintiff,

v.                                                   Case No. 0:21-CV-60746-RS

RIPA & ASSOCIATES, LLC a Florida limited
liability company,

    Defendant.
_____/

## RIPA & ASSOCIATES, LLC'S MOTION TO DISMISS COMPLAINT

Defendant, RIPA & Associates, LLC ("Ripa"), through counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), files this Motion to Dismiss Plaintiff's, John Aguila, Complaint for Damages and Incidental Relief ("Complaint"), [Doc. 1]. In support, Ripa states:

## INTRODUCTION

In this case, Plaintiff seeks to recover alleged damages related to his purchase of a vehicle from an individual identified as "Bob Marks." Plaintiff alleges six causes of action against Ripa: (1) Action for Violation of the Federal Odometer Act (Count I); (2) Action for Violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) (Count II); (3) Action for Fraud (Count III); (4) Action for Negligent Misrepresentation (Count IV); (5) Action for Fraudulent Inducement (Count V); and (6) Action for Breach of Express Warranty (Count VI). For the reasons set forth herein, this Court should dismiss all counts in the Complaint because of Plaintiff's failure to state a cause of action.

More particularly, with respect to Counts I-V, Plaintiff at all times transacted and interacted directly with "Bob Marks." Despite this, Plaintiff erroneously seeks to attribute "Bob Marks'" acts, representations, and omissions to Ripa, without any factual support or justification. Instead, Plaintiff's allegations are entirely conclusory. As such, Plaintiff's Complaint fails to connect any

allegations of fraud or wrongdoing to Ripa and, thus, fails to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standards for fraud claims.

Second, Plaintiff failed to sufficiently allege any actual or apparent agency relationship between Ripa and any individual in the Complaint. Instead, Plaintiff readily admits that Mr. LaFace, Ripa's president and CEO, is not "Bob Marks," and that Plaintiff is entirely unaware of whether or to what extent another alleged employee, Mr. Turner, was involved in the purported misconduct or whether he is even "Bob Marks."

Finally, with respect to Plaintiff's Breach of Express Warranty Claim, the Complaint is utterly devoid of any allegation that Plaintiff notified Ripa of the alleged breach of a warranty. That pre-suit notice requirement is a precondition of imposing liability under Florida law.

## KEY FACTUAL ALLEGATIONS

1. This case stems from Plaintiff's purchase of a pickup truck from an individual Plaintiff identifies as "Bob Marks."

2. In the course of his search to purchase a "reliable, lower mileage used pickup for his small business," Plaintiff found a 2015 Dodge Ram 1500 listed for sale by "Bob Marks" on the "OfferUp" website (the "Advertisement"). Complaint, ¶¶ 13-14.

3. The Advertisement of "Bob Marks" identified the truck as a 2015 model with 82,000 miles and clear title. Complaint, ¶ 15.

4. Plaintiff ultimately contacted "Bob Marks" who said that the truck was still available and that he used the truck in his plumbing business. "Bob Marks" also verbally confirmed that the vehicle had 82,000 miles. Complaint, ¶ 20.

5. After speaking with "Bob Marks" on the phone, Plaintiff decided to meet with "Bob Marks" in a parking lot in Pompano Beach, Florida, to look at the truck and decide whether to buy it. Complaint, ¶¶ 23-28.

6.During the course of negotiations, "Bob Marks" agreed to lower the price from $12,500.00 in his Advertisement to $11,500.00, which Plaintiff agreed to pay in cash. Complaint, ¶ 32.

7."Bob Marks" filled out the assignment section on the original title for the truck, and then handed it to Plaintiff to finish filling out, with respect to Plaintiff's name and address, and to sign. Complaint, ¶¶ 35-39.

8.Plaintiff then checked and read out loud to "Bob Marks" the truck's mileage from the odometer as "Bob Marks" wrote that information on the transfer of title. Complaint, ¶¶ 40-44.

9.Plaintiff then paid "Bob Marks" $11,500 in cash for the truck, and "Bob Marks," in turn, folded and handed the transfer of title to Plaintiff. Complaint, ¶¶ 45-46.

10.After leaving with the vehicle, Plaintiff decided, for the first time, to obtain a CARFAX Report for the truck, which revealed that the truck was a 2014, not a 2015 per "Bob Marks'" Advertisement, and had, as of April 2020, 177,372 miles, not 82,500 per "Bob Marks'" Advertisement. Complaint, ¶¶ 54-58.

11.Plaintiff then decided, also for the first time, to "look[] more closely at the title that had been handed to him by 'Bob Marks,'" and discovered that "Bob Marks" had checked a box with regard to the odometer reading to reflect that the reading was not the truck's actual mileage. Complaint, ¶¶ 59-61. Plaintiff also discovered that "Bob Marks" had notated a sales price of $5,000.00, instead of the $11,500.00 that Plaintiff actually paid to "Bob Marks." Complaint, ¶66.

12.Plaintiff subsequently discovered that "Bob Marks" apparently sold other vehicles on the "OfferUp" website, and also apparently used another name or alias, "Bobby Turner," to sell other vehicles on the website. Complaint, ¶¶ 73-75.

13.Plaintiff reached out to "Bob Marks" and confronted him about the inaccurate mileage of the vehicle. Complaint, ¶ 77. In response, "Bob Marks" explained that he had made a

mistake in not disclosing to Plaintiff that the vehicle's engine had been replaced and that, as a result, the odometer had been altered. Complaint, ¶ 78.

14. Plaintiff demanded, and "Bob Marks" initially agreed to provide Plaintiff, a refund for the vehicle. Complaint, ¶¶ 79-80.

15. "Bob Marks," however, ultimately stopped returning Plaintiff's calls. Complaint, ¶¶ 81-82.

16. Ripa is one of the largest underground contractors on the west coast of Florida. Complaint, ¶ 96.

17. Chris LaFace is Ripa's president and chief executive officer. Complaint, ¶ 85.

18. Mr. LaFace is not the "Bob Marks" that Plaintiff met and from whom Plaintiff purchased the truck. Complaint, ¶¶ 61-62, 64, 86.

19. Robert Turner is Ripa's fleet operations manager. Complaint, ¶ 87-88, 93, 96-98.

20. Plaintiff admittedly does not know the extent or details of Mr. Turner's involvement in the purported misconduct or even whether Mr. Turner is "Bob Marks" or "Bobby Turner." Complaint, ¶ 97.

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss on that basis, a plaintiff's complaint "must contain factual allegations that are 'enough to raise a right to relief above the speculative level;'" i.e., it must contain sufficient factual matter, accepted as true, to state a claim to relief that is facially plausible. *Space Coast Credit Union v. Lynch*, 12-60430-CIV, 2014 WL 1230719, at *3 (S.D. Fla. Mar. 25, 2014). To do so, a plaintiff must plead facts that allow a court to draw reasonable inferences that the defendant is liable for the alleged misconduct, as opposed to facts that are merely consistent with a defendants liability, the latter of

which stop short of the line between possibility and plausibility. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Stated differently, "when a plaintiff has not 'nudged [its] claims across the line from conceivable to plausible,' the complaint 'must be dismissed.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Federal Rule of Civil Procedure 9(b), in turn, requires a party alleging fraud to "state with particularly the circumstances constituting fraud." Furthermore, when a plaintiff's claims for relief – even those that do not require proof of fraudulent intent – are based on alleged fraudulent representations and omissions, every claim is subject to Rule 9(b)'s heightened pleading standard. *Id.* at *4; *see also State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1328 (S.D. Fla. 2017) (acknowledging split among federal district courts on issue, but holding where gravamen of FDUTPA claim sounds in fraud, "the heightened pleading standard of 9(b) applies."); *Bertolotti v. A&I Int'l Motor Corp.*, 16-22185-CIV, 2016 WL 6804624, at *2 (S.D. Fla. Nov. 17, 2016) ("Because a private cause of action requires the allegation of an intent-to-defraud, courts have held that the stringent pleading standards of Federal Rule of Civil Procedure 9(b) apply to Federal Odometer Act claims.").

Generally speaking, "Rule 9(b) serves three main goals: 'to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from 'improvident charges of wrongdoing,' and to protect a defendant against the institution of a strike suit.'" *Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1184 (S.D. Fla. 2019) (internal citations omitted). In other words, the clear intent of Rule 9(b) is to "eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed," *Friedlander v. Nims*, 755 F.2d 810, 813 at n. 3 (11th Cir. 1985), and otherwise to protect defendants from frivolous lawsuits. *U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1313 at n. 24. A plaintiff's failure to specifically plead the minimum elements of their allegation "enables them to learn the complaint's

bare essentials through discovery and may needlessly harm a defendant's goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract settlements." *Id.*

## ARGUMENT AND MEMORANDUM OF LAW

I. **PLAINTIFF'S THREADBARE ALLEGATIONS AGAINST RIPA ARE INSUFFICIENT**

There is no question that Plaintiff's Complaint hinges on allegations concerning his interactions with an individual identified as "Bob Marks," rather than Ripa. More particularly, Plaintiff initially found the vehicle in question through the Advertisement of "Bob Marks," not that of Ripa, which purportedly contained misrepresentations as to the truck's mileage. It is "Bob Marks," not Ripa, who Plaintiff then spoke to over the phone concerning the truck's mileage and "Bob Marks'" prior use of the truck in his plumbing business. It is "Bob Marks," not Ripa, with whom Plaintiff then met and completed the transaction. "Bob Marks," not Ripa, completed the transfer of title form by inserting the mileage information, and checking the box signifying that the mileage is "NOT THE ACTUAL MILEAGE." Indeed, it is "Bob Marks," not Ripa, who purportedly admitted he had made a mistake in not disclosing to Plaintiff that the truck's engine had been replaced, resulting in the alteration to the odometer, and who offered to refund Plaintiff.

After stripping away Plaintiff's allegations as to "Bob Marks," the remaining pertinent fraud allegations against Ripa are threadbare and conclusory:

- Plaintiff agreed to pay "Bob Marks" $11,500 in cash "[i]n reliance on the ***representations by Defendants***;"[1]

- "[t]he odometer reading of approximately 82,500 miles on the odometer was a further representation of the mileage ***by [Ripa]***;"

---

[1] This particular allegation is perplexing insofar as it refers to "Defendants" in the plural form, despite the fact that Ripa is the only Defendant in this case.

- "[t]he choreographed fraud would also ***allow [Ripa]*** to assert so-called 'plausible deniability;'"

- Before the truck was listed for sale, ***"[Ripa] or person [sic] working with or at the direction or with knowledge of [Ripa]*** rolled back the odometer of the Pickup by as much as 100,000 miles'"

- "[t]he intended use of the Tag Agency was purposeful ***on the part of [Ripa]*** as it would avoid having vehicle purchasers having direct contact with employees of the [Florida DMV] who may question the mileage disclosures in the fullness of time;"

- an advertisement on the "OfferUp" website listed by "Bobby Turner" is "an example of those ***by [Ripa's] agent***;" and

- with regard to "Bobby Turner's" advertisement on "OfferUp," ***"[Ripa] falsely used a badge*** that would lead a purchaser to believe that 'Bobby Turner' was a small businessman."

Complaint, ¶¶ 34, 43, 49, 52, 68, 75, 76 (emphasis added).

The foregoing allegations purportedly support Plaintiff's Federal Odometer Act claim (Count I). Namely, that "[t]he odometer of the Pickup was either tampered with or was replaced by Defendant without compliance with the Act;" "Defendant knew or had reason to know that the odometer had been tampered with;" "Defendant failed to provide a complete and accurate disclosure of the mileage of the Pickup;" "Defendant entered into a conspiracy to violate the requirements of the Act in contravention of 49 U.S.C. § 32703(4);" and "violated the Act with the intent to defraud." Complaint, ¶¶ 104-105, 109-111. These allegations, like the underlying allegations against Ripa, are entirely conclusory.

Similarly, with respect to Plaintiff's FDUTPA claim (Count II), Plaintiff relies on the above underlying allegations, and then states, in entirely conclusory fashion, that "Defendant has violated

the requirements of the Florida Odometer Act," and "Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the conduct of trade or commerce." Complaint, ¶¶ 120-121.

Finally, with respect to Plaintiff's Fraud (Count III), Negligent Misrepresentation (Count IV), and Fraudulent Inducement claims (Count V), Plaintiff generally alleges that Ripa "misrepresented" and failed to disclose material facts concerning the sale of the truck and the truck's mileage, knew that the representations were false or made the representations recklessly or negligently, intended that Plaintiff rely upon them, and that Plaintiff relied upon the representations and omissions to his detriment and in purchasing the truck. Complaint, ¶¶ 129-132, 136-139, 143-145. These allegations are nothing more than a mechanical recitations of the elements of the claims themselves. *See Ashcroft*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (internal citations omitted).

In essence, while Plaintiff at all times transacted and interacted directly and only with "Bob Marks," he erroneously seeks to attribute "Bob Marks'" acts, representations, and omissions to Ripa, without any factual support or justification for doing so. In reality, Plaintiff *readily admits* that Mr. LaFace, Ripa's president and CEO, is not the "Bob Marks" from whom Plaintiff purchased the truck, and that Plaintiff does not at all know whether or not Mr. Turner, Ripa's fleet operations manager, was involved in the purported misconduct or that he is even "Bob Marks." Complaint, ¶¶ 86, 97.

In short, Plaintiff's Complaint fails to connect any allegations of fraud or wrongdoing to Ripa. *See United States v. Aggarwal*, 6:03CV117ORL31KRS, 2004 WL 5509107, at *3 (M.D. Fla. Nov. 8, 2004) (citing *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga.*, 755 F. Supp. 1040, 1052 (S.D. Ga. 1990)); *Rowan v. Rax Auto Mall, Inc.*, 2002 WL 215524, at *2 (N.D. Ill. 2002) (dismissing Federal Odometer Act claim against individual

8

defendant where complaint did not allege that individual transferred ownership of vehicle to plaintiff, or signed odometer disclosure statement; complaint, instead, alleged that dealership sold car to plaintiff and another individual signed the statement as the dealership's agent). The absence of any factual basis connecting Ripa to any purported fraud or misconduct is directly at odds with Rule 9(b)'s purpose to protect Ripa's reputation and good will, and serve as safeguard against frivolous lawsuits. Accordingly, the Court should dismiss Counts I-V of Plaintiff's Complaint for failure to state a cause of action.

## II. PLAINTIFF FAILS TO SUFFICIENTLY ALLEGE ANY AGENCY RELATIONSHIP

Aside from Plaintiff's failure to sufficiently attribute any fraud or misconduct to Ripa, Plaintiff also fails to sufficiently allege any actual or apparent agency relationship between Ripa and any other individual mentioned in the Complaint. Under Florida law, "[t]o demonstrate an actual agency relationship, a plaintiff must allege (1) that the principal acknowledges the reputed agent was acting as its agent; (2) the reputed agent accepts that undertaking; and (3) control by the principal over the agent's day-to-day activities during the course of the agency relationship." *Great Florida Bank v. Countrywide Home Loans, Inc.*, 10-22124-CIV, 2011 WL 382588, at *4 (S.D. Fla. Feb. 3, 2011). Similarly, "to allege an apparent agency relationship, a plaintiff must demonstrate facts showing '(1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by the third party in reliance on that representation.'" *Id.* (quoting *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 326 (Fla. 3d DCA 2008)).

Here, Plaintiff's allegations concerning a purported agency relationship fall woefully short of the above standards. In particular, Plaintiff alleges, again in entirely conclusory fashion, that "Mr. Turner was a management employee of [Ripa] and had the actual, apparent and/or implied authority to act on behalf of [Ripa]," and that "[a]ll acts and omissions of any employee, agents and representatives of [Ripa] described below were within the scope of the employment and

agency of the employee, agents and representatives or were subsequently ratified by [Ripa]." Complaint, ¶¶ 10-11. These allegations, however, are tantamount to legal conclusions, which standing alone are insufficient. *See Great Florida Bank*, 2011 WL 382588, at *4 (dismissing fraud claims in part based upon plaintiff's failure to allege any facts supporting legal conclusion that actual or apparent agency relationship existed between individuals, who purportedly made fraudulent statements and omissions, and defendant in the case).

Perhaps more critically, Plaintiff's theory of liability as to Ripa revolves around allegedly fraudulent statements and omissions of "Bob Marks," yet there are no facts establishing, or even alleging, that "Bob Marks" is the actual or apparent agent of Ripa, or that "Bob Marks" is Mr. Turner who is, in turn, Ripa's actual or apparent agent. To the contrary, Plaintiff's Complaint *readily admits* not only that Mr. LaFace, Ripa's president and CEO, is not "Bob Marks," but also that Plaintiff is entirely unaware of whether or to what extent Mr. Turner was involved in the purported misconduct or whether he is even "Bob Marks." Complaint, ¶¶ 86, 97.

Moreover, Plaintiff's Complaint itself contradicts any notion that "Bob Marks" is the actual or apparent agent of Ripa. In fact, as far as Plaintiff understood from the Advertisement and representations of "Bob Marks," and as he pled in his Complaint, "Bob Marks" owned his own plumbing business and used the truck as part of that business. Complaint, ¶ 16, 20.

The allegations regarding "Bob Marks" are the lynchpin of Plaintiff's claims. Thus, Plaintiff's failure to properly plead any facts establishing an agency relationship, or any other relationship for that matter, between Ripa and Mr. Marks are fatal to its claims in this case. *Great Florida Bank*, 2011 WL 382588, at *4.

### III. FLORIDA LAW BARS PLAINTIFF'S EXPRESS WARRANTY CLAIM

Lastly, Count VI of Plaintiff's Complaint, asserting a claim for Breach of Express Warranty, must be dismissed because of Plaintiff's failure to satisfy the pre-suit notice

requirements for such a claim under Florida law. In particular, in order to recover for a claim of breach of express warranty under Florida law, "[t]he buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." *Sclar v. OsteoMed, L.P.*, 17-23247-CIV, 2018 WL 559137, at *2 (S.D. Fla. Jan. 24, 2018) (quoting Fla. Stat. § 672.607(3)(a). As this Court has explained, "[t]he statute is abundantly clear: This pre-suit notice requirement is 'a precondition of imposing liability.'" *Toca v. Tutco, Inc.*, 430 F. Supp. 3d 1313, 1323 (S.D. Fla. 2020). It is the plaintiff's burden to show that required notice was given within a reasonable time in order to fulfill this threshold condition. *Id.* (citing *Gen. Matters, Inc. v. Paramount Canning Co.*, 382 So. 2d 1262, 1264 (Fla. 2d DCA 1980)).

Despite its burden here, there are no allegations that Plaintiff notified Ripa of the alleged breach of a warranty. Accordingly, Plaintiff "has failed to state a claim for breach of express warranty," and the Court should, thus, dismiss Count VI of Plaintiff's Complaint. *Jovine v. Abbott Laboratories, Inc.*, 795 F. Supp. 2d 1331, 1339-40 (S.D. Fla. 2011); *see also Burns v. Winnebago Industries, Inc.*, 492 Fed. Appx. 44 (11th Cir. 2012).

## CONCLUSION

In sum, Plaintiff's claims hinge entirely on Plaintiff's transaction and interaction with "Bob Marks." While Plaintiff seeks to attribute "Bob Marks'" acts, representations, and omissions to Ripa, Plaintiff has failed to provide any factual support or justification for doing so. Indeed, far from supporting any agency or other relationship, Plaintiff's allegations as to "Bob Marks" expressly negate any relationship, agency or otherwise, between Ripa and "Bob Marks." Finally, Plaintiff's failure to provide Ripa the requisite statutory notice necessarily dooms its express warranty claim.

Plaintiff's Complaint fails to state any cause of action against Ripa and, therefore, must be dismissed.

WHEREFORE, Ripa respectfully requests that the Court grant this Motion, dismiss Plaintiff's Complaint, and grant such further and other relief as the Court deems just and proper.

Respectfully submitted,

*s/ Robert C. Graham, Jr.*
E.A. "SETH" MILLS, JR., ESQ.
Florida Bar No. 339652
Email: smills@mpdlegal.com
Secondary: csolstis@mpdlegal.com
TY G. THOMPSON, ESQ.
Florida Bar No. 0585041
Email: tthompson@mpdlegal.com
Secondary: mlewis@mpdlegal.com
ROBERT C. GRAHAM, JR., ESQ.
Florida Bar No 105951
Primary: rgraham@mpdlegal.com
Secondary: mlewis@mpdlegal.com
MILLS PASKERT DIVERS
100 North Tampa Street, Suite 3700
Tampa, Florida 33602
813-229-3500 – telephone
813-229-3502 – facsimile
*Counsel for RIPA & Associates, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 14, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and sent via electronic mail a copy of the foregoing to:

Robert W. Murphy, Esq.
1212 S.E. 2nd Ave.
Fort Lauderdale, Florida 33316
rwmurphy@lawfirmmurphy.com

Joshua Feygin, Esq.
Joshua Feygin, PLLC
1800 E. Hallandale Bch. Blvd. #85293
Hallandale, Florida 33009
josh@jfeyginesq.com

*Counsel for Aguila*

                                      *s/ Robert C. Graham, Jr.*
                                      Attorney